Based on the docket this morning is People v. Monroe, 09-616. And we have Mr. O'Neill and Ms. Camden. Is that right? May it please the court. Counselor. My name is Lawrence O'Neill. I'm from the Office of the State Appellate Defender and I represent LaVon Monroe. This appeal is from the second stage dismissal of Monroe's post-conviction petition where the trial court granted the state's motion to dismiss. The background for this appeal is that a jury found Monroe guilty of delivery of cocaine within 100 feet of public housing. He was sentenced to an extended term of 12 years in prison. The evidence at trial showed that a confidential source named Bobby Boyer wore a wire and set up a cocaine buy from Monroe. Boyer drove Monroe to a house. Monroe entered the house and returned to Boyer's car and handed him less than one point gram of cocaine to Boyer who gave Monroe $50. Under the direct appeal, this court found that the evidence failed to establish that the delivery occurred within 1,000 feet of public housing and remanded for re-sentence on the lesser delivery charge. Monroe was re-sentenced to 10 years in prison. Monroe then filed a post-conviction petition. The court appointed counsel who filed a Rule 651C certificate asserting that no amendments were necessary. The state filed a motion to dismiss which the court granted. In this appeal, Monroe raised two issues. In argument one, Monroe's petition alleged a substantial violation of his constitutional right to a fair and impartial jury so as to merit an evidentiary hearing. In Monroe's petition, he alleged that a man on his jury named Mark Jones was having a sexual relationship with his girlfriend Tracy Stewart. Stewart told Jones about Monroe far before Monroe's trial. Thus, Jones knew about Monroe and Stewart's relationship at the time of his trial. Yet, when asked during Boyer if he knew Monroe, Jones failed to disclose that he knew Monroe and that he was involved in a relationship with Monroe's girlfriend. The petition also alleges that had Monroe known that Jones was having a relationship with his girlfriend, he would not have allowed Jones to remain on his jury. Monroe attached to his petition the affidavit of his girlfriend, Tracy Stewart. In this affidavit, Stewart asserted that she had a sexual relationship with Jones and that she learned after the fact, after Monroe's trial, that Jones was a juror at Monroe's trial. She also asserted that Jones lied when he told the court or did not disclose to the court that he knew Monroe because Jones knew full well who Monroe was. Stewart also asserted that she kept her sexual relationship with Jones secret from Monroe, so Monroe did not know who Jones was during Boyer and at trial. Jones told Stewart that he knew that it was wrong to keep from the court in Boyer that he did not know Monroe and that he intentionally kept this information about his relationship with Stewart from the court and Monroe. At the second stage of these post-conviction proceedings where the court considers whether the petition alleges a substantial violation of the petitioner's constitutional rights, all well-pleaded facts that are not rebutted by the record are taken as true and the court should not engage in any fact-finding or credibility questions. Thus, because Monroe's claims were not rebutted by the record, the petitioner in the affidavit established that Mark Jones was deceitful during Boyer when he did not tell the court that he knew Monroe, when in fact he knew Monroe and knew that he was involved in a relationship with Monroe's girlfriend. Jones's impartiality in trial may have been compromised by having a competing love interest with Monroe's girlfriend. However, because Jones was not truthful during Boyer, Monroe did not have an informed basis upon which to inquire into Jones's possible bias and then intelligently assess Jones as a prospective juror and possibly exercise a parenthetic challenge to remove Jones from the jury. The defendant has a constitutional right to a fair and impartial jury. Boyer facilitates the impaling of an impartial jury by filtering out prospective jurors who harbor bias and prejudice. However, this works only if the prospective jurors are truthful during Boyer. My understanding is the question that was asked of Jones was, do you know the defendant? Correct. And his answer was no. Well, he didn't raise his hand. Does anybody know that he didn't raise his hand? Correct. He wasn't asked, do you know of him? I mean, is there any evidence in the record that he actually was acquainted with the defendant? And does that make any difference? Not in the trial court proceedings, Your Honor. There's nothing in the record to reflect that. I mean, really what the affidavits show is that he knew of the defendant because they dated the same woman. Well, that's an important distinction when you consider how he knew him. He knew him more than just know Monroe's name or the man from the neighborhood or something. He knew Monroe within the context of having a competing love interest with State's Tracy Stewart. So that knowing him in this context suggests that he perhaps was impartial and biased towards Monroe. Can we assume bias because somebody was dating somebody else's ex-girlfriend? Well, I think we can assume that, Your Honor. Maybe the guy was happy that he took her. Well, that perhaps may be true, but I think that it's important to note here that because Jones did not disclose this, Monroe did not have an informed basis to inquire further into Jones' possible bias. So it's not only the fact that perhaps Jones was biased, which I think the reasonable suggestion is that he was, but also that he didn't disclose that. Or if he would have disclosed that, then Monroe's attorney could have, you know, fleshed that out a little bit, asked him some questions, and then made an intelligent assessment whether to strike Jones from the jury. Well, and the affidavits reflect that Jones had the sexual relationship with Stewart when the defendant was in jail. That's correct. So your argument would be he'd have every reason to want him to go to jail again, or at least... Sure. That's another part of it, Your Honor, the possible bias thing, yes. Okay. So thus, considering the facts alleged in the petition and the affidavit are taken true here, these facts presented in this stated proceedings establish that a juror was deceitful during Boydere, which denied Monroe the right to intelligently assess him as a prospective juror. Now, again, Boydere facilitates the appareling of a fair and impartial jury by filtering out jurors who are potentially biased and prejudiced. But Monroe denied that opportunity here by Jones's failure to disclose this information. Thus, the allegations presented in Monroe's petition regarding Jones's veracity during Boydere, with the consequent that a biased juror sat on his jury, established that it's a substantial constitutional violation of Monroe's right to apply to a fair and impartial jury involving matters not contained in the trial in the appellate court record, direct appeal record. Thus, Monroe respectfully asks Your Honors to reverse the order granting the state's motion to dismiss and grant him an evidentiary hearing on these matters. As to argument two, Monroe claims that his petition should be remanded because post-conviction counsel did not substantially comply with Supreme Court Rule 651C. When counsel failed to make necessary amendments to support Monroe's pro se post-conviction claim, the trial counsel failed to interview two witnesses who would have benefited his defense. Unless Your Honors have any specific questions about this issue, I will stand on my brief regarding argument two. Thank you, Your Honors. Thank you. May it please the court, counsel, Jennifer Camden on behalf of the state. The first reason why dismissal of the Jones claim was proper was that the petition does not allege that Jones was biased. The allegation is that Jones did not tell the truth at Boydere and had heard of him and that the defendant was thereby deprived of the opportunity to discover Jones' quote possible bias. But at this stage of the proceedings, the defendant must make out a substantial showing of an actual constitutional violation, that is, a biased juror, not a substantial showing that he missed an opportunity to inquire into the possibility of a violation. You don't think there's an inference of bias under the alleged facts? You know, he has a sexual relationship with his girlfriend when he's in jail now. He's serving on a jury and the result of that trial could be he goes to jail again? Well, Your Honor, I think that what the defendant is doing is proceeding as though the facts in the affidavit and the petition are well-plaid and can be taken as true at this stage. However, the people's position is laid out in the brief that these allegations are not well-plaid and need not be taken as true. Further, the defendant must actually allege bias. This Court held in Roger's case. This was a pro se petition. Right. Well, it's notable that appointed post-conviction counsel did not see fit to amend these allegations. That's not specifically raised. There's an issue raised about the failure of post-conviction counsel to comply with 651C, but shouldn't a post-conviction counsel amend it to allege bias under those facts? If it's defecting because of that? Well, that's not a claim raised by the defendant on appeal here, Your Honor. Moreover, I think we can see that the claim and moreover if the claim is frivolous, i.e. not well-plaid, then counsel would not have been provided unreasonable assistance for failing to do so. In this case, these allegations were not well-plaid because the particulars are laid out in the people's brief, but they suffer from one or usually more of several defects. Their hearsay and further unsourced hearsay were not told the identity of the declarant. They're nonspecific and vague. They are conclusory. There is no allegation, importantly, that at the time of Guadir or trial, that Jones actually had made the connection between himself, assuming that he was having a sexual relationship with Stewart, that he had made the connection between a man that Stewart may have told him about in whatever level of detail, again, not clear from Stewart's affidavit, and the man sitting there at defense counsel table next to the defense lawyer. That's not clear, whether he had made that connection at the time. Therefore, the allegations are not well-plaid, and I don't think that it's reasonable for this Court to assume bias, nor do I think that bias can be assumed. I think that it needs to be alleged. Well, at this point, I mean, we're at the second stage, so the question that the trial court would be determining is whether to give him an evidentiary hearing to thrash all that out. So your argument is that in his pro se pleading, he wasn't specific enough to actually have an evidentiary hearing on it. That's right. The allegations are not well-plaid to make out a suspense. Even though the girlfriend in her affidavit says that she talked to the juror afterwards and he acknowledged to her that he knew who the guy was and kind of questioned whether he should have sat on the jury or not, but he said something like, she said, well, isn't that a problem? And he said, only if you get caught. That's what the affidavit says. What inference are we supposed to take from that? Well, Your Honor, first of all, all of that is hearsay, and much of it is unsourced hearsay, and hearsay affidavits need not be taken as true here. Furthermore, another reason why dismissal is proper is that the petition does not explain why this claim could not have been raised on direct appeal. After all, the defendant here is alleging facts that allegedly existed at the time of trial, and the post-conviction petition is for claims that could not have been raised on direct appeal. And in response to that point made by the state in the answer brief, the defendant notes only that Stewart's affidavit said that she learned of unspecified information, quote, after the fact. That's a perfect example of the flaws in the affidavit. This assertion does not say what she learned, from whom she learned it, or when she may or may have passed it along to the defendant. That is, it's not established that the defendant did not learn this information within the 30-day time frame for filing a post-trial motion, and this Court has affirmed a dismissal in a very similar circumstance in People v. Lacan, a case cited in the previous brief. As to the second claim in the defendant's argument about ineffective assistance of trial counsel, that's a claim made in the petition that trial counsel was ineffective for failing to call two witnesses. The defendant on appeal claims that post-conviction counsel should have amended that claim to add the contents of what those witnesses would have said. I'd only point out that the issue on direct appeal that this Court considered was whether the trial court sufficiently inquired into this pro se allegation of ineffective assistance of counsel under People v. Moore, but this fact is raised in the defendant's plenary as a reason why the claim of ineffective assistance of counsel is not barred by the doctrine of res judicata. But in determining that the trial court discharged its obligations under People v. Moore, this Court didn't necessarily have to weigh the merits of the allegation of ineffective assistance of counsel and concluded that these two witnesses would have provided cumulative evidence, evidence that was cumulative of other testimony provided by other witnesses, and therefore trial counsel provided ineffective assistance. And so this claim in the petition is frivolous because it is contradicted by the record and barred by the doctrine of res judicata. Thank you, counsel. Any rebuttal? What do you envision, if you have an evidentiary hearing, who would be called? Tracy Stewart and perhaps Mark Jones to flesh out what Jones knew about Monroe at the time of Lloyd Deere. The fact that you don't have an affidavit from Jones at this time, his comments are hearsay within her affidavit. True, Your Honor, but again, at this stage of the dismissal stage of the proceedings, the facts alleged in the petition, which Monroe sufficiently set out, that a man named Mark Jones said on his jury he was having a relationship with, that's sufficient in itself at this stage, Your Honor, to advance the proceedings to the third stage where we can have an evidentiary hearing on the question and flesh out the determination of whether Jones did have a bias or those questions that opposing counsel presents regarding the possible bias. So I think this stage is important to, again, remember that these facts alleged in the petition are taken as true and the proper place for the specific factual questions to be fleshed out and determined is at the evidentiary hearing stage. And I think that the petition and Jones and Stewart's affidavit sufficiently established that a constitutional violation of Monroe's rights were fair and impartial jury and also significantly that he did not have the opportunity because of Jones's failure to disclose his relationship and his knowledge of Monroe, he did not have an opportunity to inquire further into Jones's possible bias during voir dire. Do you have any comment on her affidavit? It doesn't indicate when she obtained this knowledge other than after trial. Well, I think Stewart's affidavit says something like Jones spoke, told her about disturbing on Monroe's jury on August 7th, I believe, of 2007. Monroe was sentenced on, I believe, July 17th of 2007. But there's nothing in the record to suggest that Stewart told Monroe about what Jones had told her within the 30-day period that the state argues Monroe should have raised this issue in a post-trial motion. There's nothing in the record to reflect that. It's pure speculation. Thank you. I don't have anything else around here. Any other questions or others? Thank you, counsel, for your briefing argument today. Thank you, Mayor.